[S. F. No. 7637. In Bank.—June 29, 1921.]

G. F. GRAY et al., Plaintiffs and Appellants, v. MARTIN BEKINS et al., Defendants and Appellants.

[1] CONTRACTS—PREVENTION OF FULL PERFORMANCE—OCCURRENCE OF ACTS—RECOVERY ON CONTRACT.—A party who has contracted to perform an act for an agreed consideration can maintain an action upon the contract, even though he himself has failed to fully

---

1. Act or default of employer as excusing delay in performance of working contract, note, 17 Ann. Cas. 646.

perform if performance on his part was prevented by operation of law, the act of the other party, the act of God or the public enemy.

[2] ID.—BREACH OF CONTRACT PREVENTING FULL PERFORMANCE—RECOVERY OF REASONABLE VALUE.—If the other party to the contract has not actually prevented performance, but has merely committed a breach of the contract, the party who has not fully performed the act agreed upon cannot maintain a suit upon the contract, but may treat the contract as terminated and sue for the reasonable value of that which he furnished under the contract.

[3] ID.—BREACH OF BUILDING CONTRACT—RESCISSION BY CONTRACTORS —ACTION FOR REASONABLE VALUE OF LABOR AND MATERIAL — PLEADING AND EVIDENCE—FULL PERFORMANCE.—Where building contractors upon the owner's breach treated the contract as rescinded and sued for the reasonable value of labor performed and material furnished, it was unnecessary to allege or prove full performance on their part, or acts which rendered performance impossible.

[4] ID.—IMPLIED COVENANTS IN BUILDING CONTRACT—NONINTERFERENCE WITH PERFORMANCE BY OWNER.—In every building contract which contains no express covenants on the subjects there are implied covenants to the effect that the contractor shall be permitted to proceed with the construction of the building in accordance with the other terms of the contract without interference by the owner and that he shall be given such possession of the premises as will enable him to adequately carry on the construction and complete the work agreed upon.

[5] ID.—PARTIAL DESTRUCTION—APPORTIONMENT OF LOSS—PROVISION OF CONTRACT—PERFORMANCE.—A provision in a building contract for an apportionment of loss between the owner and contractor in the event of a partial destruction of the building by earthquake does not relieve the contractor from performance.

[6] ID.—FURNISHING OF MEN AND MATERIALS—RIGHT OF OWNER UPON CONTRACTOR'S DEFAULT—PROVISION OF CONTRACT—TAKING CHARGE OF WORK UNAUTHORIZED.—A provision in a building contract authorizing the owner to supply the contractor with the men and material necessary to complete the work in time if the contractor fails in such regard after three days' notice does not authorize the owner to take' charge of the work himself, but permits him to furnish men and material for the contractor's use only.

[7] ID.—INEFFECTUAL NOTICE TO CONTRACTORS—PREVIOUS VIOLATION OF CONTRACT BY OWNER.—A notice given by owners to building

5. Destruction of subject matter of contract as excuse for nonperformance, notes, 1 Ann. Cas. 466; 12 A. L. R. 1273.

contractors to provide the necessary men and material to complete the work pursuant to a provision of the contract authorizing the owners to furnish the men and material upon the contractors' default is ineffectual where prior to the giving of the notice the owners have taken possession and assumed charge of the work.

[8] ID.—PARTIAL DESTRUCTION OF UNCOMPLETED BUILDING—ACTS OF OWNERS—VIOLATION OF CONTRACT—RIGHTS OF CONTRACTORS.—A building contract was violated by the owners and the contractors were entitled to treat the contract as terminated and sue for the value of what they had furnished, where after the partial destruction of the uncompleted building the owners, without the authorization or consent of the contractors, who had not abandoned the work, assumed charge of the repairing and occupied a part of the building.

[9] ID.—RECOVERY BY CONTRACTORS—ACTS OF OWNERS PREVENTING PERFORMANCE—IMMATERIAL FINDING.—Where building contractors, after breach by the owners, sued for the value of work performed, and not upon the contract, the finding that the acts of defendants prevented performance by plaintiffs was immaterial and may be treated as surplusage.

[10] ID.—ACTS SUBSEQUENT TO BREACH OF CONTRACT—LACK OF FINDING—INSUFFICIENT GROUND OF REVERSAL.—Where building contractors, after breach by the owners, sued for the value of work performed, and not upon the contract, the failure to make findings with reference to demand for performance and expenditures of defendants subsequent to the breach of the contract was not a ground for the disturbance of the judgment.

[11] ID. — LIMITATION ON PAYMENT OF CONTRACT PRICE — CONTRACT PROVISION INAPPLICABLE.—Where building contractors, after breach by the owners, sued for the value of work performed, and not upon the contract, the fact that under the terms of the contract the plaintiffs could demand only three-fourths of the value of the work until the building was completed and that they were to share the expenses of repairing the damages in the event of a partial destruction had no effect upon the judgment in their favor.

[12] ID.—OCCUPANCY OF PARTIALLY COMPLETED BUILDING—INTERFERENCE WITH PERFORMANCE—EVIDENCE.—In an action by building contractors, after breach by the owners in occupying the building without plaintiffs' consent before completion, the testimony of a witness as to whether such occupancy interfered with performance by the contractors was admissible, since the same did not call for a conclusion, but a combination of observation and inference.

[13] INTEREST—LEGAL ACTIONS—TIME OF ALLOWANCE.—Interest is allowable from the time the sum in suit becomes due if the same is certain or can be made certain by mere calculation.

[14] ID.—ACTIONS UPON CONTRACT—RULE AS TO INTEREST.—In actions upon contracts the sum due or the means of calculating the sum

are usually clearly provided for in the contract, and interest is consequently allowable from the time the sum in suit becomes due.

[15] ID.—ACTION ON QUANTUM MERUIT—ALLOWANCE OF INTEREST—TIME.—Where in an action in *quantum meruit* the exact amount of the indebtedness is known and admitted by the allegations of the answer, interest should be allowed from the date of the filing of the answer, and not from the date of the entry of the judgment.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco. John J. Van Nostrand, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

J. E. Manning for Plaintiffs and Appellants.

Wm. H. Chapman and Edwin L. Forster for Defendants and Appellants.

LENNON, J.—The partial destruction of an unfinished building by an earthquake on April 18, 1906, engendered the controversy which culminated in the present action. Plaintiffs had constructed the first and second stories of a six-story brick and concrete warehouse, which they had contracted to build for defendants, when the portions erected were damaged by earthquake on the date above mentioned. When plaintiff H. N. Gray, defendant Martin Bekins, the architect, and brick contractor met at the building a few weeks after the earthquake and examined the structure to ascertain the damages, it was decided that some repairing was necessary. The exact amount of repairing was not determined, but there is testimony that it was decided that, before any further work was performed by plaintiffs, the building inspector of the board of public works of San Francisco should pass upon the extent of repairing to be done so that any subsequent controversy with the board might be avoided.

Plaintiff H. N. Gray testified that it was agreed that, before plaintiffs proceeded with the work, the examination by the building inspector should be procured by defendants and that the latter should inform plaintiffs of the result. The next information plaintiffs received after the meeting of the parties at the building above referred to was in the following month of June, when plaintiff H. N. Gray drove to the

building and for the first time discovered men taking down the brick work and cleaning the brick, although plaintiffs had not authorized anyone to tear down or demolish any portion of the building. Plaintiffs thereupon wrote a letter to the architect, dated June 29, 1906, containing a notification that, by tearing down portions of the brick work without plaintiffs' consent, defendants had broken and terminated the contract with plaintiffs. The architect delivered this letter to defendants. The next word received by plaintiffs was a communication from defendants, dated August 14, 1906, notifying plaintiffs that, unless they immediately repaired the damages caused by the earthquake, defendants would make the repairs and charge plaintiffs with a proportionate share thereof. After the receipt of this letter, plaintiff H. N. Gray again went to the building and, finding that a considerable amount of repairing had already been performed by defendants, declined to proceed under the contract. It also appears from the testimony that, continuously after the earthquake, the first floor of the building was occupied by the "Bekins Van & Storage Company"; an office for the company had been established in the building, a sign bearing the name of the company was on the front of the building and several van loads of furniture were stored in the building. Neither plaintiffs nor the brick contractor gave permission to anyone to occupy any portion of the structure.

In August, 1906, plaintiffs instituted the present action for the recovery of $6,242.03, the difference between $13,742.03, the value of the work performed on the building by plaintiffs up to April 18, 1906, and seven thousand five hundred dollars, the sum alleged by plaintiffs to have been paid by defendants. The complaint contains three causes of action. In the first cause of action it is alleged that defendants prevented the performance of the contract by the acts above set forth. The second and third counts omit all reference to the contract and are respectively in *indebitatus assumpsit* and *quantum meruit*. Defendants' answer denies that performance of the contract was prevented by defendants, admits the value of the work performed by plaintiffs was $13,742.03, and alleges that $10,485.00 of this sum has been paid, alleging, by way of a special defense and counterclaim, that the contract provides that the sum paid should at no

time during the progress of the work exceed three-fourths of the value of the work done and, therefore, the sum paid by defendants to plaintiffs was in excess of the amount due, and that, by the terms of the contract, plaintiffs are liable to defendants for a proportionate share of the sum expended by defendants in repairs. Defendants seek to recover a judgment against plaintiffs for $654.75.

The trial court found, among other things, that defendants rendered it impracticable and impossible for plaintiffs to proceed with the construction of the building by taking possession of and occupying the unfinished building as a warehouse and by tearing down and demolishing large portions of the unfinished warehouse, all without authority or consent from plaintiffs. The court further found that $13,742.03 was the value of labor and material furnished by plaintiffs in the construction of the warehouse, of which sum $10,485.00 had been paid plaintiffs by defendants, and rendered judgment in favor of plaintiffs for the sum of $3,257.03. Defendants appeal from the whole of the judgment and plaintiffs appeal from that portion which allows plaintiffs interest on the amount of the judgment only from the date of the entry of the judgment.

The main point advanced by defendants is that plaintiffs failed to allege or prove full performance or facts excusing performance by plaintiffs. [1] A party who has contracted to perform an act for an agreed consideration can maintain an action upon the contract even though he himself has failed to fully perform if performance on his part was prevented by operation of law, the act of the other party to the contract, the act of God or of the public enemy. (Civ. Code, secs. 1511, 1512, 1514.) [2] If the other party to the contract has not actually prevented performance, but has merely committed a breach of the contract, the party who has not fully performed the act agreed upon cannot maintain a suit upon the contract, but may treat the contract as terminated and sue for the reasonable value of that which he furnished under the contract. (*Cox* v. *McLaughlin,* 76 Cal. 70, [9 Am. St. Rep. 164, 18 Pac. 100]; *Carlson* v. *Sheehan,* 157 Cal. 692, 696, [109 Pac. 29]; *Connell* v. *Higgins,* 170 Cal. 541, [150 Pac. 769].) [3] In the instant case plaintiffs have treated the contract as rescinded and are suing for the reasonable value of labor performed and materials furnished,

and it was, therefore, unnecessary to allege or prove full performance on their part or acts which rendered performance impossible. If defendants violated the contract by the commission of the acts alleged, plaintiffs can recover the reasonable value of the work performed and materials furnished by them less any sums already paid by defendants.

[4] In every building contract which contains no express covenants on the subjects there are implied covenants to the effect that the contractor shall be permitted to proceed with the construction of the building in accordance with the other terms of the contract without interference by the owner and that he shall be given such possession of the premises as will enable him to adequately carry on the construction and complete the work agreed upon. Such terms are necessarily implied from the very nature of the contract and a failure to observe them not consented to by the contractor constitutes a breach of contract on the part of the owner entitling the contractor to rescind, although it may not amount to a technical prevention of performance.

[5] In the instant case the contract provided for an apportionment of loss between owner and contractor in the event of a partial destruction by earthquake, but the contractor was not thereby relieved from performing the contract, nor did the contract require or authorize the owner to take possession of the building and repair the same in the event of a partial destruction. [6] There was a provision in the contract authorizing the owner to supply the contractor with the men and material necessary to complete the work in the time required by the contract if the contractor failed to make adequate provisions along these lines after three days' notice by the owner. However, the effect of this provision was to permit the owner to furnish men and material for the contractor's use only; it did not authorize the owner to take charge of the work himself. (*American-Hawaiian Eng. etc. Co.* v. *Butler,* 165 Cal. 497, [Ann. Cas. 1916C, 44, 133 Pac. 280].) [7] Moreover, the only notice from defendants to plaintiffs was the notice of August 14, 1906, which was ineffectual for any purpose in view of the fact that, long before this notice, defendants had taken possession of the building and assumed charge of the work. The contractor was under the same obligation to continue and complete the building after the partial destruction as before, and

the right to proceed with the construction free from inter-
ference by the owner likewise continued. As previously
stated, there is testimony to the effect that plaintiffs never at
any time authorized defendants to assume charge of the
repairing, but that it was agreed that work should cease
until defendants had obtained an inspection of the building
and notified plaintiffs of the result. Plaintiffs were never
notified of the report of the building inspector, nor were
they informed that defendants desired plaintiffs to proceed,
notwithstanding the agreement. [8] Without notifying
plaintiffs in any way whatsoever or obtaining consent in any
form, defendants proceeded to demolish portions of the
structure and, by thus ignoring the contractor's right to
continue with the construction of the building and by under-
taking to perform the acts due from the contractor, in the
absence of an abandonment of the work by the contractor,
defendants violated the contract.

Likewise the occupancy of the building by defendants as a
warehouse, without plaintiffs' consent, was a breach of plain-
tiffs' rights under the contract. By reason of these viola-
tions, plaintiffs were entitled to treat the contract as ter-
minated and sue for the value of what they had furnished.
(*Adams* v. *Burbank*, 103 Cal. 646, [37 Pac. 640].)

Defendants next attack certain findings of the trial court.
It may be stated that the evidence upon the question of the
extent of the occupancy of the building by defendants sub-
sequent to April 18, 1906, as well as the evidence upon the
question of plaintiffs' consent to defendants' acts, was con-
flicting. Upon these issues we have merely set forth the
evidence in favor of plaintiffs upon which the findings were
based, for that part of the conflicting testimony credited by
the trial court constitutes the facts of the case for the pur-
pose of this appeal.

The findings of the trial court are to the effect that de-
fendants, without plaintiffs' consent, took possession of the
building about April 25, 1906, occupied the same as a ware-
house and have ever since continued to so occupy it; that
they demolished portions of the said building without author-
ity or consent from plaintiffs, and that, until these acts of
defendants, plaintiffs performed all conditions of the con-
tract upon their part. These findings, together with findings
of the value of the work performed and material furnished

and the amount thereof remaining unpaid, were sufficient to support a judgment in favor of plaintiffs for the latter sum. [9] The finding that the acts in question prevented performance by plaintiffs, complained of by defendants, is immaterial and may be regarded as surplusage, for, upon the theory on which the action was brought, plaintiffs were not required to prove performance was rendered impossible. Defendants claim that the decision is against law in that the court failed to find on certain issues raised by defendants' special defense. From what has been said it is evident that the findings in effect sufficiently cover the allegations of the defendants' special defense that plaintiffs refused to complete the contract, although defendants had performed all the conditions required of them by the contract. Those allegations of the defense which are not covered by the findings are allegations with reference to defendants' demand upon plaintiffs in August and October, 1906, to complete the warehouse, and allegations concerning the expenditures of defendants in repairing the building. The judgment cannot be disturbed for failure to find on these issues. (*Mission Brewing Co.* v. *Rickert,* 39 Cal. App. 668–672, [179 Pac. 720].) [10] Findings upon these issues, even if in defendants' favor, would not alter the result, for the acts and expenditures of defendants subsequent to their breach of the contract can have no effect upon plaintiffs' right to recover the reasonable value of things furnished by them prior to the breach.

[11] The facts that under the terms of the contract plaintiffs could demand only three-fourths of the value of the work performed by them until the building was completed and that they were to share the expenses of repairing damages caused by earthquake can have no effect upon the judgment in this case. The plaintiffs have not sued upon the contract and the provisions of the contract do not control, for defendants cannot ignore their own obligations under the contract and, at the same time, seek to hold plaintiffs to its terms. (*Adams* v. *Burbank,* 103 Cal. 646, 650, [37 Pac. 640]; *Keeling* v. *Schastey,* 18 Cal. App. 764, 768, [124 Pac. 445]; *Tubbs* v. *Delillo,* 19 Cal. App. 612, [127 Pac. 514].)

[12] A witness called in behalf of plaintiffs was asked if the occupancy of the property by defendants in the manner

described was such as to interfere with the contractors in the erection of the building. An objection upon the ground that the question called for a conclusion of the witness was overruled and the ruling is assigned as error by defendants. The question does not require a pure conclusion, but a combination of observation and inference on the part of the witness and the element of observation enters into the testimony called for to a sufficient degree to dispel the objections to the element of inference. (22 Corpus Juris, sec. 611; *McCormick Mach. Co.* v. *Burandt*, 136 Ill. 170, [26 N. E. 588].) Two witnesses for defendants were asked on direct examination whether defendants' occupancy interfered with the work of the men employed by defendants to repair the structure. Defendants complain because an objection to the question was sustained. The ruling does not constitute reversible error. As stated in the objection, it was irrelevant whether the men employed by defendants were interfered with or not, for it does not appear that these men were working under the same conditions or performing the same work that would have been required of plaintiffs under the contract. A witness for defendants was asked whether or not, at the meeting of the parties at the building, shortly after the earthquake, he heard plaintiff H. N. Gray say anything with reference to taking down or rebuilding any portion of the building or in regard to completing the building. Objections to the questions on the ground that they were leading were sustained. Even if the sustaining of the objections was erroneous, defendants were not prejudiced thereby, for it appears that the witness subsequently gave the testimony called for by the questions.

As previously stated, plaintiffs also appeal from the judgment, and that appeal is grounded in the contention that inasmuch as there was not at any time any dispute as to the value of the work performed and materials furnished by the plaintiffs, the sum to which the plaintiffs are entitled was liquidated and certain, and that therefore the plaintiffs should have been allowed interest on the amount of the judgment from the date of the commencement of the action.

The value of the labor performed and materials furnished by plaintiffs in the construction of the warehouse was expressly admitted in the answer of the defendants to be the sum of $13,742.03, as pleaded in the plaintiffs' complaint.

Plaintiffs' complaint alleged that only seven thousand five hundred dollars had been paid for and on account of such labor and materials, while the defendants' answer pleaded that they had paid the sum of $10,485, and, in effect, admitted that they were indebted to the plaintiffs in the sum of $3,257.03, which was the difference between the admitted value of plaintiffs' work and materials furnished and the sum alleged to have been paid on account thereof. In this behalf the trial court found in accord with the allegations of the defendants' answer.

[13] The general rule is that interest is allowable from the time the sum in suit becomes due if the same is certain or can be made certain by mere calculation. [14] In actions upon contracts the sum due or the means of calculating the sum are usually clearly provided for in the contract and interest is consequently allowable from the time the sum in suit becomes due. (Civ. Code, sec. 3302; *Fairchild* v. *Bay Point etc. R. R. Co.,* 22 Cal. App. 328, [134 Pac. 338].) [15] True, the action here is one in *quantum meruit,* but even so, if the exact amount of the indebtedness due the plaintiffs was known to and admitted by the defendants, the parties to be charged, the reason for refusing interest until the amount due is made certain by evidence no longer obtains. (*Cox* v. *McLaughlin,* 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100]; *Courteney* v. *Standard Box Co.,* 16 Cal. App. 600, [117 Pac. 778].) The test, then, to be applied in the instant case is whether or not the exact sum found to be due was known and admitted by the defendants to be due to the plaintiffs. We are of the opinion that the allegations of the defendants' answer in the particulars previously pointed out constituted an acknowledgment of plaintiffs' claim, to the extent of the sum therein admitted, and by the trial court found to be due to the plaintiffs. In short, the admission of the defendants' answer in this behalf was tantamount to an ascertainment of the balance found to be due the plaintiffs, and, consequently, interest should have been allowed thereon from the date of the filing of the answer, namely, March 27, 1907. (*Skinker* v. *Clute,* 9 Nev. 342.)

It follows from what has been said that the judgment against the defendants must be, and it is hereby, affirmed. It likewise follows that the judgment allowing interest to the

plaintiffs only from the date of the entry of the judgment was erroneous, and it is therefore ordered, upon the appeal of the plaintiffs, that said judgment be modified by allowing to the plaintiffs interest on the amount found due from the date of the filing of the defendants' answer, and the cause is remanded to the court below for the purpose of ascertaining said interest and thereupon entering judgment for the plaintiffs accordingly.

Olney, J., Sloane, J., Wilbur, J., Shaw, J., Angellotti, C. J., and Lawlor, J., concurred.